Case number 23-1716. Zhongshan Fucheng Industrial Investment Co. Ltd. v. Federal Republic of Nigeria. Mr. Bradley for the appellant. Ms. Turnsievich for the appellant. Good morning. I'm Keith Bradley representing the Federal Republic of Nigeria. Sometimes governments have dealings with private parties, maybe to procure services or to sell assets. Sometimes those deals go south. This is not that case. Nigeria has acted throughout this matter solely as a sovereign. Our law respects the immunity of foreign sovereigns from the power of our courts, and it denies that immunity only subject to specific exceptions in the FSIA, which are to be narrowly construed. The exception claimed here is an arbitration word that is supposedly under the New York Convention. That convention is concerned with private law disputes. So says the resolution that adopted. So was Nigeria engaged in any private law activity? No, it was not. Was Nigeria considered as a sovereign entity to be a person? Your Honor, in its sovereign capacity, it is not a person. It is a person only when it engages in private law activity. That is the long-standing thread in U.S. law and is certainly what everybody seems to have taken for granted during the preparation. So what are you considering to be the sovereign activity? Is it the treaty itself and then all the investments and connections for this project, or do you separate the two? Well, so I think I would turn the question on what private law activity would there be. So yes, Nigeria had a treaty that was surely sovereign, which I think Zhongshan agrees was sovereign. Nigeria itself made no investments. It was a sovereign government of a country within which Zhongshan made some investments. It is accused of having engaged in certain expropriation activities, which are police activities, for example, that are well-established to be sovereign. I don't think that Zhongshan really points to anything that Nigeria did that was private law activity. Nigeria didn't transact with them. Nigeria did not make the investments itself, for example. Nigeria and police were very much involved in what's alleged to be the violations, what's found to be violations of the investment agreements that were undertaken in this case. Well, Your Honor, I want to break that out a little bit if I could. When you talk about the violation of the investment agreements, to the extent that Zhongshan had contracts within Nigeria, the Nigerian police did not reach those. Nigeria was not even a party to those. Nigerian police were found to be involved in the expropriation activities. Yeah, which was allegedly the contracts, because it was not a party contract. The activities of police that one might call expropriation are very solidly sovereign activity, not private law activity. It says Saudi Arabia v. Nelson. No, I'm just saying that Nigeria had nothing to do with this dispute. I mean, certainly, the arbitrators found that Nigeria itself was involved in activities that they found to be expropriation, yes. What is expropriation? Arrest and torture and abuse of a business official. I'm not here to defend the substance of the activity, but as the Supreme Court said in Nelson, however one might feel about, however one might criticize the awfulness of the activity, it is sovereign activity, not private law activity. It's a little hard to separate out commercial activity from sovereign activity in the kinds of case we have here, which is a sovereign sets up a bilateral investment treaty, which is designed precisely to that happens, and when something bad happens to the investor of the counterparty, there's arbitration, and you could characterize the dispute as a breach of the relevant contracts, or you could characterize the dispute as a breach of a treaty which provides for fair and equitable treatment, most favored nation status, no expropriation, all of the above. It just seems a little artificial to unpack all of that, and in some sense, sure, this dispute arises out of sovereign acts, but it arises out of a lot of commercial aspects as well. Well, if I could, Your Honor, I want to reframe. The word commercial has used in so many different areas of law, and the crucial thing here is private versus sovereign, and I have a couple things to say in response to what you just offered. One is that if you look at the U.S. Constitution, there are so many clauses within the Constitution that are designed to facilitate economic activity. The contracts clause, for example, the due process clause, the takings clause, these are all provisions in the Constitution that are about the sanctity of property and the sanctity of economic activity that are designed to encourage investment. I don't think anybody would say that those are private law agreements. They are sovereign. So suppose same case as this one except Nigeria rather than Ogun State had entered into a contract with Songshan, then yes, Nigeria itself would be engaged as a private law citizen, right, as a private law person that had engaged with them, yes, and they would also have breached. I want to go back to the other thing that you said, which is that Nigeria was engaged in the breach of the agreement. It was not. It was not a party to any of the agreements. I think that's true. So, what are the other sovereign acts by Ogun State, right, which are attributable to Nigeria in international law? Well, if I could, the international law of attribution is not really pertinent here. The settled precedent from this court and from the Supreme Court is that that kind of attribution, the presumption of independence is not to be lightly overcome, including for jurisdictional purposes. And the Supreme Court has also said very clearly, I'm thinking here, for example, of the Amirata Hez case, that those international law obligations, whether there is a substantive obligation under international law to behave in a certain way, conduct obligation, or to provide compensation, that does not constitute an enforceable obligation, enforceable through our court. These are separate questions. And so, whether the arbitrators were correct or not to find Nigeria liable in terms of the international law, its obligations to China under that treaty by attribution is not really the question. For purposes of deciding whether Nigeria is engaged in private law conduct to bring this under the New York Convention for that kind of attribution. That's customary international law. That's not U.S. So, go back to my hypothetical where Nigeria has formed the, what's it called, the formation agreement, right? Yeah. In between the promulgation of the treaty and the breach, they formed the agreement to induce the investment. Yeah. You said they would be, that would be a New York Convention award. Yeah, I think if they were- But on your first theory, I'm not sure why that would be, because the breaches claimed in this is it sovereign or is it private? Those treaty violations are sovereign. So, seems to me on your theory, you can't explain why my hypothetical would be covered. Do you mind if I, sorry, I was hoping to reserve that. No, it's fine, keep going. So, in your hypothetical, Nigeria has engaged in breach of these agreements, and indeed, Ogun allegedly did. And in fact, Jongshan has pursued litigation against Ogun. They may or may not have, but the claims are predicated on breaches of the treaty. Failure to provide, give fair and equitable treatment, right? Which is the rough equivalent of substantive due process. Failure to give most favored nation status, the rough equivalent of equal protection. Expropriation, the rough equivalent of takings. And as you said, those are all government acts. I see. So, I misunderstood your hypothetical, actually. I was thinking about a case where the government has an agreement and engages in conduct that constitutes like a breach of that agreement. But if you want to hypothesize a government that has an agreement, and then the basis of the claim is no breach, but purely sovereign acts, in that case, I guess I would have to say, if the conduct is purely sovereign, then yes, it would still be subject, it would still be outside the convention. I don't understand how you can reconcile that with the text of the bilateral agreement. Because a bilateral agreement has, it's interesting, two separate dispute resolutions. Article 8 is for disputes between China and Nigeria. That's the state to state sovereign activity. Article 9, settlement of disputes between investors and one contracting party. And so, the treaty itself creates a remedy for an investing party against the government that signed this treaty to enforce the terms of this treaty as to the investing investors. So, Your Honor, I'm going to go back to Amarata Hetz, which actually specifically does- Can you just talk to me about what the point- Yeah. Sorry, go ahead. What I'd really like to know is how you read, what does Article 9 cover? I mean, Article 9 is certainly about a dispute between either of the sovereigns and an investor. That doesn't make it a private law dispute. It is a dispute pursuant to a sovereign obligation of these two sovereigns. It does not say anything about- That's what Article 8 is for. Article 9, you have a treaty here where two parties agree to create rights for and protections for third parties, the investing entities. And they create a distinct arbitration mechanism so that those investing parties can enforce their benefits under this treaty. That's what Article 9 does. It gives them, the investor, the right to proceed to arbitration. It does not say that arbitration gives rise to an award that is enforceable under the New York Convention or in U.S. court. So, for example- Wait, I want to slow down here. All right. So, you agree that the treaty creates legal interests and protections for investors? It does guarantee fair and equitable treatment, just like- And more than that, non-discrimination, non-expropriation, there's a long list of things. Right. All of which are sort of comparable to U.S. countries. And it gives them what we would call in sort of our language here, not only those rights, but a cause of action, an arbitral one- Arbitral. To enforce them. So, is that relationship between Nigeria and its investors that the treaty allows to be enforced against Nigeria through arbitration if there is a dispute concerning fair treatment, non-discrimination, or discrimination? Is that- How is that not within the meaning of the commerce reservation from the New York Convention, commercial activity? So, two thoughts, Your Honor. Well, three, actually. The first is we have to start with Article 1, Section 1, which is, that tells us that the New York Convention is about private law disputes, sovereigns when they are acting in private capacity. That's what everybody understood at the time. Second answer is that with respect to the U.S. additional limitation, Congress has offered its interpretation, which is legal relationships are transactional in nature. This is certainly not a transaction between- They've given them protections and rights, and they've given them a way to enforce them, and they've done it. These are investors. It's entirely commercial. Well, it is commercial and connected to commerce, but it is not a legal relationship. It's commercial, and you look at the nature of the protections. It's for properties. It's for dividends. It's for profits. So, it is exactly the type of commerce that's covered by the New York Convention. It's private law disputes. This treaty has nothing to do with private law, which brings me to my third point. This is not the first time a U.S. court has considered an international convention, an international treaty, that gave a- And you think it's private because it uses the word persons in Article 1 of the- Actually, I can go back to the adopting conference that says- I don't know the conference. I want to tell you in the text of the New York Convention that there's an even narrower entry into the convention, or what you're calling private, that would be narrower than commercial relationships between a country and its investors. So, the New York Convention, as a document from 1958, was not designed for this. It was- That's your position. I'm asking for evidence of that. So, first thing is, when they were considering it, the USSR and Belgium said, wait a second. This looks like people- The original title of it might give you the impression that this should be about states in their public law capacity. Everybody agreed that was not the purpose, so they changed the name of the convention. It was brought up during the debates. Wait a second. Could this be applying to states in their public law capacity, or should it be only states in their private law capacity when they engage in private law transactions? I think what I need you to answer is why this type of investment and creation of an investment relationship between Nigeria and its investors, an enforceable legal relationship with its commercial investors, why that is public and not private? Your Honor, it is public, sovereign as opposed to private, in the same sense as the contract clause in the U.S. Constitution. I don't think those are helpful, at least for me, maybe it's helping other people. We're not interpreting a constitution here. We're interpreting a treaty, but it is- We're interpreting a treaty about investment that's time and again in other cases, and even in the views of the United States government, has been recognized to allow exactly these types of arbitrations, and I don't see what's more, any more public. I think what you seem to be saying is the only thing that makes it public law is that Nigeria didn't have a direct commercial contract also with the investors. Is that the only difference? I think actually it might- That would make a difference for you. That would make a difference, and what was the conduct that- The government enters into public interest contracts all the time, that's in their public capacity as well as in a private capacity. They do, and actually- It's a defense contract, so I don't- Well, actually, if I could go and come to that in particular, the Supreme Court has actually answered that question. The Weltover case, which is cited in the briefs, established the standard for what is private versus sovereign. What it says is when the government is engaged in the marketplace in the way that a private law citizen could, and it drew a line, actually. It's in there. It says, on the one hand, a regulation limiting foreign currency exchange, that would be private, that would be public. Then Weltover says further, the military buying bullets, which is exactly the thing you just described, that's private because anybody can buy bullets, even though they're buying it for a public purpose. This court has said also as well, it's not about the purpose. I think private companies can enter into contracts with investors- They can. ... and say that we will treat you fairly and nicely when we do so. Well, they do, although they don't enter with ... Private companies don't undertake to guarantee fair and equitable treatment for the world at large. This is not a ... The agreement here was not with Jiangshan. It was a promise to provide fair and equitable treatment across the board. Are they third-party beneficiaries? It's their interests that are protected, and they have their own distinct and separate enforcement mechanism. Yes, it's separate from the China versus Nigeria. My point being, though, Your Honor, is not distinct to Jiangshan. It is across the board for the entire public that might invest coming from China. For actual investors in Nigeria, and actual investors. Were there any ... These actual investors, they're commercial actors. Yes, but the government- Yes, but I- Any type of entities with which other private entities in Nigeria could contract for investment? Your Honor, again and again, this court and the Supreme Court have said- The answer to my question, I think, is yes. There were companies in Nigeria that could contract with these same investors, correct? I would take for granted there are companies that contracted. In fact, there are some examples in record. So the contracting that occurred here with investors is exactly the type of thing that private entity could do. What Jiangshan did is yes, but what Nigeria did is not. If you look at so many of these cases- What is it you're saying that Nigeria did that a private company couldn't do? Well, so first off, promising fair and equitable treatment across the board. Entering a treaty with China- No, no. The treaty, this agreement itself treats any dispute with China as distinct from a dispute with investors. But the promises that Nigeria made were sovereign promises. No private party could have made these promises. These are promises to provide fair and equitable treatment as a government. Private parties can agree to provide fair and equitable treatment to investors, too. They can agree not to discriminate. They can agree not to steal their property. They can, but they do that on a to particular- Here's our company policy. Any investors anywhere in the world, we won't discriminate. We won't steal. We'll treat you fairly and equitably. Although I will say that Nigeria entered that agreement, made that promise in a contract, in a treaty with China, which Jiangshan has said, they agree it's sovereign. I mean, if the treaty's only enforcement mechanism was disputes between Nigeria and China, you'd have a lot more force to your problem is this agreement itself. It's an investor agreement focused on commercial development and creates rights for investors and a distinct arbitration enforcement mechanism limited to those investors so that they can enforce violations of the terms of this agreement against Nigeria, against a contracting party is what Article IX says. And I don't understand if you're saying that means you have to have a separate contract. Well, a separate contract is going to tell how to resolve those contract disputes. So this Article IX becomes an empty letter, I think. How does it not become an empty letter under your theory? Well, so let us suppose that, so there's an arbitral award. There are so many areas in international law where a country may have an obligation that is binding on an international law, the treaty's international law, an obligation that's binding on international law that is enforced through international law mechanisms. Amarada Hess is an example of that, for example, in which the Supreme Court specifically said, the fact that these countries have a treaty-based obligation to provide you compensation does not mean that you get to enforce it in US courts. No, but we have law that says special things about when it's an arbitration agreement, and that's what you have here is an agreement to arbitrate. That's what kicks in the New York Convention. Well, I mean, you know our position on that, obviously, but I would like to come back to something else that you said, which is that what Jiangshan did is very commercial. Of course, they are a private company. In every one of these cases about the private sovereign distinction, one side of it is a private company that is doing what private companies do, and yet, this court and the Supreme Court have again and again focused on what did the sovereign do to decide whether the sovereign was in a... I understand your position. Your position is that this was distinctly sovereign because Nigeria made a global promise to investors. Yes, a promise to China, like let's accept the third-party beneficiary, but it is global. Yes. Okay, to Chinese investors for these purposes, to Chinese. You're fair. Perfect. Globally to Chinese investors. Yes. That's what made it public and not private. Yes, and in addition, they made that promise... Companies can't do that. Private companies can't do that. I cannot think of an example where a company would make a public, like a binding promise to the world at large. Well, you just said it's not the world at large, just to China. Well, okay, to... It's not whether they would. It's whether they could. Could. But I also come back to the other... Could they? Microsoft couldn't make such an agreement? What prevents them? What about their private character prevents them from doing that? They would have no... The fair and equitable treatment that Nigeria has promised here is fairness and equity in how it regulates. It's not like... It's not a promise about how they're going to buy goods. It is a promise about how they will operate as a government. Microsoft can't promise not to expropriate. It can't promise to tax people in certain ways. We don't require... I mean, nothing would ever be private then when governments do it, because every government has... Almost everything it does, even when it's participating in the marketplace, it does through sort of regulatory regimes, like the government contract. So it can't be that... That's not how we analyze it. Of course, Microsoft can agree to be fair and equitable in its treatment. It can agree not to discriminate between investing companies. It can agree not to steal their property. It can, but it can agree... But it can't agree to do that... Arbitration, to be fair and equitable in arbitration proceedings. But it can't agree to do that by regulatory means. And I go back to Weltover and Nelson. It agrees to do it by regulatory means? Well, let's go back to the... It says the... So Article 2, Section 2, investments shall enjoy the continuous protection. What kind of protection are they talking about? That is surely regulatory protection. That is not that Nigeria will contract in certain ways. It says, subject to its laws and regulations, neither party, neither contracting party, shall take any unreasonable discriminatory measures. What measures is it talking about? It is surely talking about governmental measures. Measures is not something, a word we would usually use for procurement or contracting. It then says, they shall endeavor to provide assistance in obtaining visas and working permits. That is also regulatory. And I go back... They do that all the time. They endeavor to provide assistance in obtaining visas and work permits for their employees. They do, and that they pay for it, but they don't issue the investments. And I go back to what Nelson said and what Weltover said, which is... So when you said that the line, that there would be no such thing as private activity because governments... Obviously, anytime a government engages in procurement, it has also had its own regulatory... It has regulated the nature of the contract. But what Nelson said and what Weltover said is that the in the market and the way the private party has... Your theory, if they had a direct contract, if Nigeria had a direct contract with Jiangshan and it failed to provide, it discriminated in its laws or regulations, or it engaged in unfair treatment through its laws and regulations, I thought you agreed that they would still be able to enforce this. I think if you're referring to the discussion I had with Judge Katsas... I whacked off it. Okay. What we had come to was... They have a direct contract with Jiangshan. They've got a direct contract with Jiangshan. And really, the way you end up violating it is because you, as a matter of governmental activity, discriminate. Would that be enforceable under this arbitration agreement or not? If what they have done is, as a government, is reach a contract in the way that a private party could, that would be private. If what they have done is purely governmental, it would be governmental. They steal their property. It's appropriate. Is that the same? Is that private or public? Well, I hate to steal angels on the head of a pin, but the stealing is a word with many meanings. Like expropriation... Expropriate the property. Expropriation is something that this court and the Supreme Court have repeatedly said is sovereign. And so even in a direct contract between Nigeria and Jiangshan, that hypothetical, if the property is expropriated, that's not protected by... There's nothing they can do under this investment treaty. Foremost McKesson is a really good illustration. Is that a yes or a no answer? It depends on the conduct of the sovereign. So I'm going to... I told you what the conduct of the sovereign is. It expropriates their property and drives them out of the country. If I may, you have actually not given enough detail about the conduct. Then what do you want? Because expropriation is just a word. Let me go to... Let me talk about foremost McKesson. Before you told me it was a specialized sovereign activity... True. Fair enough. It seized their property and kicked them out of the country. That will tend to be sovereign. But let me go to... So that would be no enforcement whatsoever for those investors, even in direct contract case, is your opinion? No... That would not... Yes or... Sorry. No enforcement in US courts. So it would not qualify under the New York Convention, even in a direct contract case? If what they have done is purely sovereign, yes. If what they have done is steal their... Is seize their assets and kick their employees out of the country. And if I could, I want to answer your question. I understand, but I don't want you to... I need to clarify something before you go on, and then I will let you finish this sentence, I promise. Okay. So the answer there is yes. That does not qualify under the New York Convention. There's a reason that I'm hesitating about the yes, because it does matter the details. And I'm going to go back to foremost McKesson if I could. In which the mode of what was alleged to be expropriation was actually breach of contract. Like they took over the company's board in ways that was... That just violated the actual contract between the sovereign and the private party. Or if I could go back to Dunhill... They engaged in sovereign actions that breached a contract. That did breach a contract that they... A private law contract that they had. Or I go back to Dunhill, which is maybe 1976 case. In which Cuba did not have sovereign immunity, because what it had done was actually just breach it's like... They said expropriation in the Supreme Court. They know what you've done in this case is the same as the private debtor could do. Is it the nature of the conduct or the theory of the breach? Very good questions. Imagine United States versus Windstar, right? The government does sovereign things, but the counterparty alleges breach of contract. Is that... Where does that fall? It's a very good question. It's the nature of the conduct. And what... So even a Windstar type case where the counterparty is alleging breach of contract, no enforcement. I actually don't know the Windstar. If the breach is done through a sovereign act. I didn't know the Windstar case. So I don't know that very well. Government promises certain sovereign acts, forms contracts on that promise, changes the sovereign acts, counterparty sues for breach of contract. So what I'm hearing is that what the government did, the government's conduct... They changed the regulatory framework. Yeah. If all they've done... And I was alleged to breach a contract. Yeah. If all they've done is purely sovereign, then yes, that would be on the sovereign side of that question. Let me just ask you too. You've got China, Nigeria, bilateral agreement. And just as a more basic premise, it's meant to encourage foreign investment. So what I'm really finding difficult is that you're saying that Nigeria should not be responsible for upholding terms of the treaty within its own jurisdiction. So that's one premise. The other thing is that as I looked at article two, it's called reciprocal promotion and protection of investments. So investments of the investors of either contracting party shall enjoy the continuous protection in the territory of the contracting party. And so essentially, what's your position signaling with respect to foreign investors? With respect to the honor, I am not saying that Nigeria is not responsible. The question here is not whether Nigeria should be liable or whether there should be an arbitration. That's an issue between Nigeria and China. What I am saying is that the US courts do not have jurisdiction over Nigeria as a sovereign to enforce this arbitration award. So Jiangshan is a Chinese company. There's no connection to this country. Jiangshan is a Chinese company that wants to enforce this award using the power of the US courts against this foreign sovereign. Whether Nigeria is responsible or not is a question. And what this means for the protection of private investment, that is a matter between Nigeria and China about the performance under their treaty. That's not a question. That's not a question of enforcing in the US courts, which I go back to again, Emirata Hess, which says just because there is an international treaty, just because that treaty tells the country how to behave, just because the treaty tells you that tells that country they have an obligation to compensate you for wrong. In that case, it was the Geneva Convention for the High Seas. None of that tells you that you have the ability to use US courts to enforce that obligation. So when it says there's an arbitration provision, that's where I'm struggling. So I take your theory, which says we focus only on the nature of the activity. That means that all of our decisions where we have enforced arbitration awards arising out of investment treaties are error. If the conduct, even when there's a direct contract, which I thought was your distinction in your brief, but now you have told us even when there's a direct contract, sovereign activity still isn't sufficient to allow arbitration, right? Well, yes, this discussion has really fleshed out this distinction. In the briefing, neither side had thought we were, you know, we've been focused on contracting. This distinction had not come up. But in those previous cases, we can go back and look. But I think actually in the vast majority of them, the conduct was also private law. The Republic of Argentina versus VG Group, the investment was dismantled through laws and decrees. In Crystal X versus Bolivarian Republic, there was expropriation. In TAFNAP, we had courts facilitating acquisition of shares in other companies. I think all of those would qualify as sovereign activity. I think if I recall, and I will get lost in the details, I apologize. But I think in TAFNAP, for example, there is also private law activity with respect to the board that the country has. It wouldn't have worked without the courts also supporting improper facilitation. So, but the question, so I think in all of these cases, though, what you are asking about is mixed conduct in which a country, a government has done some private law conduct and some sovereign conduct. There's no mixed conduct here at all. Nigeria has done no private conduct. The best authority that the New York Convention's coverage of bilateral investment treaties, arbitration provisions for investors requires this level of granularity. And if you're saying it's mixed conduct, I think your position still has to be to be sent as any sovereign contract, any sovereign activity, and that sovereign activity contributed at some sort of causal contribution, it can't be covered. You can't say, is your position that as long as you mix your sovereign activity with some private activity, then you don't get the sovereignty protections? Or are you saying that each of those cases, courts went through and said that the private activity by itself was the sole cause of the breach? I don't think that in any of those cases, the courts went through that analysis at all, to be honest. That's a position that you think they should have taken? I think that if it is mixed, if there is some degree of private law activity, then yes, you have brought yourself in. And I don't want to talk about it. Just to be clear, if there's some private activity, it doesn't matter. By the government. Sure, yes, of course, of course. Like you said, there's always going to be on the other side. Right. There's some private activity by the government. Say 10% of it was, 90% of it was government. And the 10% itself could not have inflicted the harm without the 90% governmental. What would the answer be? If you don't mind, I'd rather not try to put a number on the line because- I'm trying to show, I'm trying to make, you may not want to, but I'm trying to make it crystal clear to you that sovereign activity was the driving force, causal force of the breach. So that's why I'm putting the numbers on. Yeah, I see that. And to go back- Your position would be? My position would be that if there's, I mean, I can put together some standard about substantial private activity, but I'm, I'll, let's be honest. Like, this is not a question that this, in this context that courts have thought about before, because the New York convention was not designed to- I'm trying to ask you what your legal position is and what its consequences would be were we to adopt it. Um, you don't need in this case to adopt a position about that line. Be aware, if we were to adopt your position, that we have to look at what is determinative, even in a direct contract situation, is what the nature of the conduct is. We got to know what we're buying. We got to know what we're stepping into and what we're causing other courts to have to deal with in future cases. So, you may not think it's a fair question, but I think it's a fair question to understand you're the one who brought up mixed conduct as the distinction for these cases. I've got to deal with our circuit precedents. All right? So, I do really need an answer to that, because I don't read in any of those cases, the determination that the private conduct was either the but for, or the primary, pick your causal theory, um, of the breaches in those cases. It just wasn't undertaken by this court. Yes. Um, here is the, and to be honest, here's part of why I, why I struggle with this. Um, in Weltover and in Nelson, the Supreme Court says what our question is, whether the government has engaged in, in purely in the way that a private citizen could in the market. And as you observed, that theory doesn't quite make sense because no government is ever purely, purely. They've always got the backdrop that they regulate their own private, like their own content of private law. But that is what the, what Weltover and Nelson say. And meanwhile, purely a lot in your brief. So you adopted that. Yes. And at the same time, I'm aware that we have the Belize case that we've talked about in briefs for this course in which, um, it is primarily private law activity. The government is selling assets, et cetera. And then one little corner of the contract is that as part of the, the exchange of compensation and consideration, both directions, they're going to give the investor tax preferences. Um, and this, and you know, so that, um, that is a primarily the government's activities are like the contract is primarily is private law. The activities are private law. Um, in fact, I don't remember what the government's activities, but I don't think they've reached the trend that I don't think they've reached the tax preferences. Um, and, uh, and, you know, as, as you know, this court says in Belize, we're not going to ask for the, for the word commercial in the U S reservation, we're not going to ask about private versus sovereign. That's, that's, that's in Belize, obviously. And you, you know, our position about that and what has to be a legal relationship. But as I try to reconcile that with Nelson and Weltover, where the Nelson and Weltover line does not make sense, even on their own terms to use the word purely, because as you, for what you said, that that's the struggle that I have to be candid with you, your honor about, um, where to draw that line. Um, whether one should call it, um, um, when cats, I, you know, I have, yes, I have, uh, certainly huge to Nelson and Weltover. I have inherited the line from the Supreme court, but I acknowledge that as you say, like you cannot literally apply it literally in that way. This case, of course, we don't need to apply it any that way, because this is, there's no private law conduct and no like in any sense by Nigeria. Um, if however you were to say, um, if you were to repeat the lines in the Supreme court, you'd probably be on safe ground, at least in hearing to it, even if that would be difficult to flesh out in, you know, in a case that it's got a serious question. So yeah, I acknowledge an opinion that we really don't know what it means in future cases. Um, respectfully, your honor, uh, that, that does, that does happen, but the, this, like the line about how to define what is mixed, like what to do in a mixed case, whether it's substantial or primary or purely, or whatever, even if you put a standard to that, it would would have to be fleshed out. If that case arises, there's a case that comes up. If for example, in Crystal X, uh, if Venezuela had said, no, this is not a New York convention award. And of course, in none of those cases is that dispute even coming up. Um, I'm not saying those cases were decided wrongly, but as you know, if nobody's raised the jurisdictional problem and that, that the court's decision on it, it's not, um, it's not precedential. Um, if, if in Crystal X, for example, Venezuela had said, no, this is not a New York convention award in the first place, um, because there was some bit of sovereign activity, there is no way to write a standard that is going to decide what that should have been in all of those cases. It will always be a 10 depend on the details. Um, can your position here be reconciled with this third restatement of U S law of investor state arbitration? And that restatement has some very bad language for you. Um, respectfully, your honor, I think it can. Um, so, you know, so Junction has really looked at two particular things, which I'll talk about separately. One is that definition of commercial, that definition is about the scope of what they are, of the restatement itself covers. Um, that restatement covers awards that are, for example, under the exit convention, which is a totally different regime. Yeah, fair enough. But it says that for non exit treaty-based arbitrations, not contract-based treaty-based you apply the New York convention and the federal arbitration act. Um, if you mind, I'm going to pull up my copy here. It's in, it's in 5.1 reporters note. And 1.1 says you're in the commercial bucket, even if the sovereign is a party and the dispute arises from public regulatory, and that seems to describe this case too. Great. It'd take me just one moment to get to 5.1 because there's a lot of restatement. Got the general visions here. Here we are 5.1. Um, so, um, if I'm looking at, for example, reporters note in the reporters note. Yeah. The one language for you. One, two, three, four, about five paragraphs. Yes. So, um, but if I could go back to the comments, um, here we are, the reporters note, um, the, um, uh, so the, um, I agree with you. You know, I had thought one way to, um, one way to divide up the world, which you don't make a big deal of, but it's consistent with your brief is to say private, private arbitrations, New York convention, public arbitrations. Right. Yeah. But this comment putting non exit treaty based arbitrations under the New York convention is inconsistent with that. Yeah. So the, I'm going to go back if I could to comment C before we get to the reporters notes. Um, comment C is 5.1 in 5.1. A comment C is titled investor state arbitration pursuant to an international investment contract. Got it. Um, that's, you know, a contract that did not exist in Nigeria. An international investment contract is a type of commercial contract entered into between a private party and a state. The role of the U S court in connection with a non exit convention arbitration arising out of such a contract is determined by the same bodies of arbitration law that govern the judicial role generally. Thus, when the Dixit convention does not govern the obligation to arbitrate is subject to any applicable treaty. That word applicable hides a lot of sin. Such as the New York convention. Such as the New York convention. But the word applicable is telling you that you first have to understand whether it's applicable. Right. But 5.1 and some language in, sorry, I have a lot of paper too. Yeah. 5.1 and some language in 1.1 seem to strongly indicate that we can be under the New York convention if we're talking about disputes arising from public regulatory acts. And that, that phrase is from 1.1. So 1.1, are you looking at the comment B? Yes. So public regulates, I'm going to go back to our, do you mean comment B from 1.1? That's arbitral trivial. Do you mean comment E? Okay. Thank you. Yes. Even though the dispute arises out of public regulatory acts. Yes. And that. As opposed to contract breaches. Yes. So, so first off, that is, that is about the, that is about the meaning of the context commercial for one thing, which doesn't tell us about article one, section one. It also says, so the restatement. Fair enough. But it doesn't make any sense if 1.1 carves out all, everything based on government's public acts. Well, the. You'd have no occasion to ask about any of this. That's, that's fair. But the, but this also points us back to at best to mixed cases. And, you know, they, they're writing this. They like this, this is from last year, right? Like five decades. Yeah. One answer is right. This is not how things were understood in 19. That is, that is a very important part of the answer, but they're also writing this in light of Billy's. They're aware that, for example, this court dealing with that case in which there was a private, like private law asset sale with a corner of tax preference in the, in the, in the agreement held that it was subject to your convention. So they, they, you know, the drafters got to be dealing with that body of law. As you know, we have, like, we don't view the Billy's cases controlling for the reasons that we've said, but. Okay, okay. Now I very much overstayed my welcome. No questions. Great. Thank you. We'll still give you some time for rebuttal. Thank you. Good morning.  My name is and I'm counsel for a pally industrial investment. Respectfully request the permits of the district court's order finding subject matter jurisdiction under the arbitration exception and discourse. Well, settled precedent, the word against Nigeria relates to a commercial investment. Namely, obtain an arbitration award directly against Nigeria under the China, Nigeria, which found Nigeria liable among others for expropriating commercial investment in a Nigerian free trade zone and awarded more than fifty five million dollars in damages and interest and the district court correctly decided based on this court's precedent that the award arises out of a legal relationship, whether contractual or not, that is considered as commercial for section two or two of the arbitration act. And that the arbitration exception applies. Now, had the initial burden of production to satisfy the arbitration exception, which it did pursuant to this court's precedent and Chevron. And namely, presented an alleged fact that showed that there was an arbitration agreement between Nigeria and and again, Nigeria does not contest this. And second, Zongshan also demonstrated that it has an arbitration award that emanated from this arbitration agreement. Again, Nigeria does not contest this. And in fact, Nigeria readily admits and recognizes that the award held it of liable pursuant to the BIT. And also Zongshan has met its initial burden of production to demonstrate that its award against Nigeria is or may be governed by the New York convention. And Nigeria has not come even close to meeting its burden of persuasion to show that there's an absence of a factual basis by preponderance of evidence that the FSA arbitration exception does not apply. And there are three reasons that the arbitration exception applies and why this award is or may be governed by the New York convention. And first, the award for damages to Zongshan for Nigeria's unlawful expropriation and treatment of Zongshan's multimillion dollar investment in a Nigerian free trade zone is commercial and falls under the convention pursuant to the plain language of FAA section 202. Well, the word commercial, it's referenced in non-USC section 202 and it includes legal relationships, but then it gives a descriptor as a transaction contract or agreement described in section two. And then it also gives another descriptor saying that it includes any maritime transaction or contract evidencing a transaction involving commerce. So is the treaty treated like all other documents? So your honor, I would just point first to this court's precedent in belief social development, also in DIQ and they're really fleshed out the meaning of the term commercial in section 202. And really in the context of international arbitration, this court has held that commercial refers to matters which have a connection with commerce, that a matter may be commercial, even if not contractual, so long as it has a connection with commerce. And here, the fact that Zongshan was an investor that poured millions of dollars into the host state of Nigeria as the recipient of that investment created a legal relationship under the framework of the protections guaranteed by the Bilateral Investment Treaty and also by the extension of article nine in the BIT, which provided Zongshan with an ability to directly pursue claims against Nigeria for mistreatment, various breaches of the obligations that it had. And in that sense, the term and the framing of section 202 is very broad. Again, the plain language tells us that the legal relationship need not be contractual, whether or not it is, it also says that that can include certain specific types of relationships of transaction or contract or an agreement, but is not limiting. And in fact, it is consistent to view the legal relationship between Zongshan and Nigeria that is founded under the framework of the BIT as one, as your honor pointed out, that creates a third-party beneficiary relationship. And that is the important context for the enforcement of this award. And again, pointing to the receipt. Is that part of the treaty, article nine? It's really focused on creating this. Article nine, read in light of the promises also made to investors and the rest of the treaty. In making that commitment to investors to arbitrate for violations of promises made in the treaty, and you guys may differ on the scope of that, those promises. Was that public or private activity? I get the relationship negotiating with China, that's public, but that aspect of it that was creating what could be viewed as a third-party beneficiary, both rights and means of remediation. Is that a private activity? If your honor will permit me, just to answer that question, I'm going to step back a little bit and flesh out what the framework requires and what it doesn't require. And so first, if we look at chapter two of the Federal Arbitration Act, nowhere does it make a distinction. Does it talk about the fact that awards are enforceable under the New York Convention, only in situations of private conduct or sovereign conduct? Indeed, it doesn't talk about the type of conduct at all. And I think that is particularly germane here because counsel seems to be arguing for a regime, but it does not cite any interpretations or any framing, whether it's in the FAA or in the New York Convention, that really fleshes out, you know, what role conduct here plays or private versus public activity. And in that sense, even looking at the text of the FSIA arbitration exception, in which it talks about the types of actions that can be brought, it refers to an agreement made by the sovereign state with or for the benefit of a private party to submit to arbitration any and all differences. And then it expressly states that to confirm an award may pursue into such an agreement to arbitrate. So there is a contemplation that there will be situations where a private party and a state will be arbitrating disputes. And in that sense, consistent with this court's precedent and the enforcement of investor state arbitration awards, investor state arbitration typically involves, and it does involve, breaches of a treaty. And counsel would create a rule that says, well, basically breaches of a treaty are always going to be it really is a distinction that is not rooted in anything that counsel is going to. Well, you had a situation where the dispute were actually between Nigeria and China under this treaty. Would that be enforceable in US courts under the New York Convention? So that would arise under a different article. And that could be a dispute, which could be a... That would arise under a different article. You said person has a plain meaning and there's no qualifications and it covers states. Yes. So it would arise under Article 8 of the China-Nigeria BITN would be a separate dispute. No, that would be that dispute. But let's say they arbitrate and then China wants to enforce that arbitration award in a US court under the New York Convention. And I'm trying to... There's qualifications there. There's a legal relationship. Your position is person means state for purposes of the convention. And so what would prevent courts from enforcing... Your position is that state to state agreement would be enforceable, arbitration award would be enforceable under the New York Convention in US courts. So I think it would depend, Your Honor. And I think that the reason why it would depend is first, state to state disputes could have a public international law character that is different, and that could concern something that is not commercial. And so it would not fit in... I'm assuming it meets the commercial reservation. I'm assuming that China brings a claim here. Let's imagine it was actually a Chinese governmental company instead of Xiangshan. And so China brings a claim instead of having this company bring a claim. So in that specific scenario, if the party that may have some state ownership brings a claim directly against the state under the investment treaty, it could do so under Article 9, the same article that Xiangshan pursued in its claims against Nigeria. And then it would be a bit of a different analysis. And I believe that the situation... I'm assuming they're proceeding under Article 8, because it's China versus Nigeria. And there have been instances, Your Honor, where if there is state ownership of a particular investor, where those could still proceed under Article 9 because of the definition of the term. I'm saying they proceed under Article 8, and they have arbitration under Article 8. They get some arbitral award, and China now wishes to enforce it in district court here. What I'm trying to ask is, would that type of state versus state enforcement action be covered by the New York Convention? I think that it would depend, Your Honor. It may not be. It might not be. It depends what kind of... I'm assuming it's also commercial. If it is commercial, then yes, it is. Reading the Federal Arbitration Act, that could be a possibility to the extent that it's not about non-commercial activity. But I submit that it would depend on the particular dispute and the particular situation. The dispute is over interpreting this investment treaty, which is all about commerce. So state to state dispute about how to interpret a commercial treaty, that's covered. That's enforceable through the New York Convention. Your Honor, I can't say at this moment. I think that there is a pathway in which it could be enforceable. But in terms of looking at the FSIA arbitration exception in particular, again, I would just point to the language that says, an agreement made by the foreign state with or for the benefit of a private party. And again, understanding... It's a sovereign immunity question. I think we're just asking about whether it falls under the New York Convention, which is separate from whether there might be a sovereignty there. Right. Sovereignty there. Sorry. Sovereignty, immunity, bar. So that first question, why wouldn't it fall under the New York Convention if person always means state, no exception? It could. And I think that there are circumstances looking at Chapter 2 of the... But why wouldn't it? Your Honor, I think it would just depend on the particular type of... And I'm just being mindful of Article 8 and the type of interpretation that the two states might be disputing about. And I think that for the purposes of these types of investors... To be clear on what fair and equal treatment means. Okay. That's my hypothetical. Or non-discriminatory treatment. They're disputing those things. Right, Your Honor. And I think that there is a way in which two states having a dispute pursuant to this particular investment treaty would be enforceable under the New York Convention, depending on the type of dispute and depending on... Has the New York Convention been applied in the past for a country versus country, state versus state dispute that you're aware of? I am not aware of that having been applied, Your Honor. And that's a real difficulty for your position because the one thing that was crystal clear from the negotiations at the New York Convention, to the extent we care about the treaty equivalent legislative history, is that the convention did not cover state to state awards. That was crystal clear. Yes, Your Honor. And I think here, just wanting to bring it back for the purposes of disputes that are occurring between an investor and a state, so out of the realm of state to state, it is clear enough that in those situations that the New York Convention would apply. The term person has been interpreted by the Belize Bank case, by the district court, finding that essentially in circumstances where a private party is pursuing claims with a state, in that scenario, that the New York Convention would apply. Person, if the word person in the treaty doesn't cover a state when it's arbitrating against another state, I mean, that is just to say, like, you know, you can't just rest on some dictionary definition of person to encompass state. It might or might not. And then you need to look at, you need to look at, and you can't get there from the existence of a private arbitral right of action under Section 9, because there's a private arbitral right of action, there's a state arbitral right of action under Section 8 of the treaty. So, you just need to kind of go back to either background principles or what the negotiators had in mind, which is would the convention cover states, you know, do you think about this as more sovereign or more commercial? Well, I think, sorry, go ahead. I think here, again, just stepping back a bit, if states have legal personality under international law, which they do, and just for the purposes of applying the New York Convention within the United States and in the framework that we know of and recognizing that we don't have a framework under current U.S. jurisprudence for the application of state-to-state awards. That's why I'm just hesitating a bit, because I think in this context, at least it's fairly clear that looking at a circumstance where an investor brings claims against a state pursuant to an investment treaty award, and that arises out of an investment in that state, that that is well within the realm of coverage by the New York Convention. Why? I mean, if you were looking for a template of how to capture disputes between a sovereign country and investors of a different country, I mean, it would be exit, which uses all of those terms. It wouldn't be a convention that, you know, whatever you think its outer bounds are, the primary focus is on private arbitration, and it just uses this general word, person. It seems an extremely elliptical way of sweeping in this whole category of investor sovereign disputes. So, to answer that, there is certainly an exit convention mechanism, but it was not created in a what convention? Exit convention, but it was not meant to supplant the application of the New York Convention, and in fact, many treaties provide for... Well, it actually does. If something's enforceable through exit, it's not enforceable through the New York Convention. Yes, but the arbitration agreement may provide for different types of arbitrations by different types of arbitral institutions. So, for example, if it were an ad hoc arbitration like the case was here, that would not go through the exit convention mechanism, but there are other mechanisms, namely the New York Convention, that do apply, and the focus there is, as the New York Convention was implemented in the United States through Chapter 2 of the Federal Arbitration Act, Section 202 sketches out what falls under the New York Convention, and it states that it is an arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, and that that shall fall under the convention, and this court, again, has applied this in the context of investor state awards that have been enforced, and that is the framework that we are operating with. The theories and the portion of this treaty that sort of, or an idea, turns away from talking to China and turns out to Chinese investors and says, you have these protections and we will arbitrate with you if you please come invest in our country and help develop it economically. That is the state acting more in a private capacity than a public capacity, a private versus sovereign, I guess, capacity. Is that the theory of these cases? I get that there's lots of cases where this has happened, although I think they have all involved direct commercial contracts, but that doesn't seem to matter to Nigeria. But it is a theory, then, that for you, since you don't have a direct contract, that this Article 9 and the protections it enforces are sort of like an aside in the middle of the treaty that speaks to and creates these third-party rights with commercial entities. Thank you, Your Honor. So a couple of answers to that question. And again, I'll step to Section 202, which says that what is required is a legal relationship, whether contractual or not. And so in that sense, that does not need to be a direct agreement. And what is really necessary is to flesh out the relationship between the parties. And here the relationship is one where Dzongshan was an investor that poured millions of dollars into a free trade zone to develop it to... Under the bilateral treaty, that's what I'm trying to ask, because you don't have a direct contract. Under the bilateral treaty, what is the relationship between Nigeria and Dzongshan? That of an investor, Dzongshan, and the recipient of an investment, Nigeria. I'm sorry, I'm looking for a label. Is it private or sovereign? So that is in the context in which we have been discussing this morning. From the China-Nigeria... You have the China-Nigeria relationship in the treaty, and then you have this third-party relationship with investors. Yes. You agreed up front, and Judge Katsas' reference is sort of at least background understanding that state-to-state disputes are not under the New York Convention. That's at least a background. I don't know that there's case law on that, but that seems to be a background understanding. And so what I'm trying to understand is, does something change when it's no longer Nigeria-China? When you're talking about this investment relationship, does something change that's material for purposes of the New York Convention if we assume that the New York Convention doesn't cover state-to-state? That's what I'm trying to understand is, was there some transition in the treaty, and is that a tenable rating of treaties? Yes, Your Honor. So in that scenario, there absolutely is a different type of relationship between Dzongshan and Nigeria than between China and Nigeria here. And again, that is within the express purpose to be able to foster investment. And as the preamble says, the BIT sought to be conducive to stimulating business initiatives of investors like Dzongshan for the purpose of increasing prosperity in both states. And so in that sense, there is a relationship that is forged there. And when Dzongshan goes and invests money to develop a free trade zone that was set up in part by federal agency of the Nigerian government, like the Nigerian Export Processing Zones Authority, there is a relationship that is created there. And there are obligations that Nigeria has toward an investor like Dzongshan to protect the investment and not to damage the investment, whether that be through expropriation, through a lack of fair and equitable treatment. And that framing is what casts the legal relationship between Dzongshan and Nigeria. And that's how Dzongshan and Nigeria are not strangers to each other because of how would Dzongshan have been able to pursue and obtain a 50 plus a million dollar arbitration award against Nigeria. It was based on breaches of obligations that Nigeria owed to Dzongshan on the premise that Dzongshan was an investor. And the arbitral tribunal had to find that Dzongshan was an investor with a qualifying investment, which he did. And the qualifying investment is typically a wide range of non-exhaustive list of assets. And that's what Dzongshan satisfied and the tribunal found. And I just at this jurisdictional stage, again, all that is required to find subject matter or jurisdiction pursuant to the arbitration exception and this court's precedent is that Dzongshan has produced and Nigeria does not dispute that there is an arbitration agreement that has resulted in an arbitration award against it. There are myriad cases that enforce investor state arbitration awards that are analogous. Do you agree that we have to find that Nigeria is a person under article one of the convention? Apologies, your honor. Is that part of the predicate inquiry? So a part of the, so first, I think it is important that the chapter two of the Federal Arbitration Act, which implements the New York Convention does not at all exclude the New York Convention from applying to states and from being enforced against states. And so I think in that sense, it is material. Chapter two of the Federal Arbitration Act is the term parties and allows one party to confirm an arbitration award that it obtained against another party. And so in that sense, the Federal Arbitration Act does not place any strictures on the type of person against whom an arbitration award. We wouldn't construe the FAA to be inconsistent with the New York Convention, right? Yes, your honor. And in this case, that wouldn't take us back to the question about the New York Convention. Yes. And Zongshan's position is that the ordinary meaning of the term persons include states like Nigeria. And again, we have the restatement formulation third that the principal persons under international law are states. And we have the United States... Does the restatement address state versus state arbitration? Yes. So the restatement has talked about state versus state taking on a different character depending on the type of dispute. If it's a border dispute, if it's a certain type of dispute, then that takes it out of... It's a different realm. It's hard to imagine how state versus state isn't always going to be imbued with a lot of sovereign capacity in their agreement, even if they are... After World War II and we're building up Europe, we are helping it to develop and flourish. That was still very much agreements done in a sovereign capacity. And so I guess what we're struggling with is how that line changes or doesn't when it's sovereign versus an investor without any direct contracts. But I think, again, your opponent here says same answer. There is a direct contract. And then we're just looking at the activity. Absolutely. Now, do you agree with that? It doesn't matter whether it's a direct contract or not. We just look at the nature of the sovereign activity? No, Your Honor. First, there doesn't need to be a direct contractual arrangement between the two parties. And I also submit that the type of activity is not what is the crux of the inquiry in terms of whether the commercial reservation applies, whether under Section 202 or Article I.3 of the New York Convention. Simply, what needs to be of a commercial character is the legal relationship between the arbitrating parties. And in that sense, it takes conduct out of it, which is why it makes sense that investor state awards are enveloped in this system because there's a commercial character. There are of the FSIA in taking the FSIA, the New York Convention, and the FSIA as a whole, it has created a regime whereby investors can pursue enforcement of arbitral awards, again, that are not in the ICSID construct, because ICSID awards are very specific, that allows them to enforce those awards directly against the state. And so in that sense, this is why the United States has taken the position in 1980 in an amicus brief in the LIEMCO case that there is no exception or there's no treaty-based exception to the enforcement of an arbitral award by a private party against the state. They had a direct contract there. Yes, Your Honor, but it wasn't necessary to the conclusion. It might have been necessary to the U.S. positions. We don't know. Well, I think it's illustrative that even in the absence of hinging something like that on the presence of a contract, I think that speaks a lot because there's, and obviously, if the investor state provisions and the bilateral investment treaty is creating a third-party beneficiary relationship, third-party beneficiary contract with the investor and the state, that further imbues it with directness. But again, this is a third-party relationship here. I know the treaty is commercial. I'm just trying to get, do you think it's private? Yes. So the relationship between Zangshan and Nigeria, the legal relationship, is one that, although it's through the vehicle of a treaty, it's private in the sense that there are obligations that Nigeria as a host state makes to Zangshan as an investor who is a private party here who has made the investment. But in that sense, even looking at jurisprudence that is enforcing arbitration awards pursuant to the FSAI arbitration exception at the jurisdictional stage, especially, there isn't a discussion of whether the state was acting in a sovereign or in a private capacity because what is underlying really and truly the relationship and what's underlying of the enforcement regime is that investor state arbitration awards have been recognized by this court and others to fall within the New York Conventional regime and to be enforceable. And that is all that Zangshan is doing. It is not doing anything unprecedented. It's simply asking that its arbitration award that arises out of a commercial matter, that arises out of its multi-million dollar investment being destroyed. You may not know this, or maybe it's just not in the record. There was a direct contract with Ogun State, if I'm pronouncing that correctly. Do you happen to know if there's any reference in that contract to this treaty? Actually, I believe, Your Honor, there was. I don't have that before me, but I believe that there was a reference. And if I may point you to... Is that in the record, do you think, Aileen? Sorry, this is out of the blue, I know. Yeah, I believe there is a reference to that in the arbitration award, if I can find that for you, that there was some expectation and mindfulness about obligations made under the China-Nigeria bilateral investment treaty. Excellent. That's good. You can submit that to us in letter after argument, just so we don't take your time. It's hard to look. Is that okay? Any other questions? Yeah, just I wonder how much of your theory or your position depends on using 2020's understandings projected backwards onto a 1958 treaty? I mean, we're in a very global world. There are lots of investment disputes. The subject of government investor disputes is the entire topic of this new restatement. There's an exit mechanism for arbitrating those disputes, and then judicial enforcement is virtually automatic. So we've been desensitized to those kinds of awards being enforced. But a very different world in 1958. I mean, we're only a couple of years after the United States first accepted the proposition that a government could be, for sovereign immunity purposes, could be treated as private, even when it was engaged in purely commercial activity. So I just wonder, from the perspective of the time of the treaty, it seems like this would have been a very big deal to put this kind of dispute into a framework that really was focused on private, private disputes. Thank you, Your Honor. There's a lot in there. Two responses to that, if I may. And I'll first, I think, start with the context of what you mentioned, of what was understood then and now. And I would submit that even the drafting history that Nigeria has pointed to does not necessarily prove its point. It does not evidence a consensus that the term states was meant to exclude states qua states, or states that are acting in some particular capacity. In fact, that's nowhere in the text. And I would just call attention to the Supreme Court statement in G Power Energy saying that generalizations from negotiating and drafting history cannot be used to create a rule that finds no support in the treaty's text. Now, going back to that negotiating history, we have a statement from Belgium that was referenced by counsel that stated that the clause should expressly provide that public enterprises and public utilities should be deemed to be legal purposes, legal persons for the purposes of this article, even if their activities were governed by private law. But frankly, that does not tell us that persons are excluded when engaging in the type of acts that have led to this investor state award. I mean, it suggests that the hard question in 1958 was whether to cover governments when they're doing private sort of activities, not that anyone would have thought you'd cover governments when they're engaged in sovereign activities. And still, I think this is why the position is instructed because, and this is a little bit difficult to understand from Nigeria's position, because if you have an act like expropriation, well, that is an act that is committed by a government and it is sovereign, is the taking of property in violation of international law. And that is, it's unclear whether the fact that that can be a sovereign activity, that that is sovereign conduct, how that can overwhelm or what that means in the context of this private versus sovereign. But certainly, this court has enforced awards that arise out of expropriation and crystal acts, and it's also a circumstance where there was no direct contractual relationship in crystal acts. The claimant was directly contracting with an entity. So it really is difficult to understand what here under counsel's test is positive and who decides. There's no framework simply in the case law to even tell us how does one apply this private versus sovereign conduct. It might or might not be the right test, but there are all sorts of contexts in which we have to, courts have to distinguish sovereign acts from private acts. So, I mean, the argument that, gosh, this just isn't manageable doesn't move me very much. Right. And so I would point here to believe social development as a good example, because it discusses a case that was discussed earlier in the day, Weltover. And I think two things that are important here is also which FSIA immunity exception is invoked. And again, here, Nigeria cited multiple cases that are exploring whether it's a commercial activity exception in 1605-2. Again, those are contexts where a party is bringing a direct claim for liability against a sovereign. That's just simply inapplicable here. And another reason why it's inapplicable, because it uses a commercial activity, which is different, and this court has interpreted it as different than the term commercial in the FSIA arbitration exception. And specifically in belief social development, the court has stated that Congress was not trying to codify whatever restrictive theory of immunity is evoked by the term commercial activity. When it was ratifying the New York Convention, this was not the intent. And that's why in the international arbitration context, the term commercial means something broader and means something more. And again, I think here, looking in totality at the FSIA arbitration exception, which is giving the ability to pursue enforcement of arbitration awards directly against states. Again, the statute makes express reference to an agreement made by the private party. That is a circumstance that we are dealing with here. But that is well unsatisfied. And indeed, the FSIA arbitration exception only states that the award is or may be governed. And so at the jurisdictional stage, Zongshan has met its burden of production, but again, the burden of preponderance, the heavier burden falls on Nigeria, and it simply has not shown by a preponderance of evidence, but burden of persuasion that this arbitration exception does not apply to enforce Zongshan's award directly against it. Thank you very much. Thank you very much. Mr. Bradley, we'll give you three minutes. Thank you. So a few thoughts. One is, I think you're right that Zongshan's position cannot explain why a state-to-state arbitration would not be covered. It's been pretty well understood that it's not. The restatement of foreign relations says, the following are ordinarily not subject to the New York Convention. Arbitration of a controversy of a public international law character, such as a boundary dispute, that obviously, or a dispute about our interpretation of or performance under an international agreement. That is, the restatement of foreign relations, obviously, a different reporter from the other restatement, but there is some general agreement. That's one standard, performance under an international agreement. If I go back to the committee report on the New York Convention, when it was being drafted, the committee that drafted it says, this convention will be good because it will facilitate the enforcement of foreign and respect the sovereign rights of states. And respect the sovereign rights of states. So they said, right in 1955, as they were drafting it, that's what the drafting committee says. Judge Millett, I hear your concept that I think we're all agreed that the agreement with China itself was sovereign, but perhaps the promise to the investors in the treaty was private law conduct? I found the line from... Okay, fair enough. I mean, if that same language were reproduced in a contract between Nigeria and an investor. So, what would it be? If the same language that we won't use our laws to discriminate, to unfairly treat, to expropriate, and if we violate this agreement, you can arbitrate it that's the contract. Same words, but it's a direct contract with the investors. Let me read you the passage. Can I read you the passage from Weltover that answers this question? The Supreme Court says, the question is whether the particular actions are the type of action by which a private party engages in trade or traffic or commerce. So... We have a lot of cases in this court where at least when there's been a direct contract between foreign state and an investor, that we've allowed those to be enforced under the New York Convention. We've got a lot of those cases. That's why what I'm struggling with on your end is you seem to resist the notion, in fact, you did expressly resist the notion that if this exact same textual provisions that are in the bilateral treaty are cut out and planted into a contract directly between Nigeria and Shaanxiang, and the exact same conduct occurs, you would say that can't be enforced. I would go back to this... Am I right in understanding that or have I misunderstood your position? So we had this multiple discussions about whether the direct contract matters or does not matter. And you see me being pushed around on that a lot because, and I'll admit it's hard, because lots of times the direct contract is very relevant. It does represent a way in which the government is engaging in the market. But I'm going to go back to this standard that's from the Supreme Court. I just want an answer. I understand what the Supreme Court has said, not helping me without some sense of application. So they speak in a general sense. So try to resolve this case. So we take all the languages in this bilateral agreement and we cut and paste it into a direct contract between Nigeria and Shaanxiang for the exact activity that happened here, the exact same violations that they allege occurred here, and the same type of arbitration they obtained here. So they get the award, but they get it for breach of a contract or that contract provided for arbitration. Yes or no could be enforced under the New York Convention. The reason there's not a yes or no is that the hypothetical you just posed, again, does not have that information. If, for example, Argentina has a bond that it promises investors certain things that might include that, that could be a contract that's private law activity. I'm giving you the facts, okay? All right. All the facts are exactly what happened here. Factually on the ground. That's the governmental activity at issue, all right? It's the exact same factual activity. The only thing I'm adding in is that in addition to this treaty, there is a direct contract between Nigeria and Shaanxiang, and that contract offers the exact same promises, except it's one-on-one now, it's not global, from Nigeria to Shaanxiang against discrimination, against expropriation, against treatment, and promising fair and equitable treatment, and providing for arbitration for violations of these contract promises. So, and what makes it hard is that what you just described is not a contract that a government would enter in the marketplace. Is that hard for you or is that easy for you? Is your answer then it's not equivalent to marketplace conduct? It's not, it's not, it's hard. It's not equivalent to marketplace conduct. Why is it hard then? Why, under your theory, you would say it can't be enforced? Because there is, you could imagine circumstances where it could be part of engaging, and you go back to the Microsoft example. I'm not giving you other facts. I'm giving you these facts. You should be able to tell me, because these facts are exactly, you know exactly what these facts are. I know exactly where you're going, yes. So if, let us hypothesize then that Nigeria's... I've given you the hypothesis. Right, they write a contract for everybody. No, the contract between Japan and Nigeria, not everybody. Right, sorry. They write a promise to Jiangshan that says those things. Yes. That sounds to me... And it's just an arbitration. Right, that sounds to me like things that a sovereign would do. That sounds, that sounds sovereign, not private. Because... So they get all this investment and everything, and then you should... So I'm... I get it. You're saying that the promises in this treaty are all sovereign. It doesn't matter if they're in a direct, direct, direct contract or in a treaty for your purposes. They can't be enforced. Because of its sovereign character, yes. Now, governments do engage in such... Because of the activities, sovereign character. Um, the, the... The promise, sorry, the promise... The promise... Activities are in activities. Yes. Treatment or don't discriminate. Right, right. In that, in your hypothetical, the promise is sovereign and the activities, like the expropriation remain sovereign as well in your hypothetical. So yes, they remain sovereign. The reason that I keep hedging is because you can imagine, as you said, Microsoft could write a contract to somebody that says, I will treat you fairly. Right? But they're doing that in the context of engaging the market as a government. And a government could engage in the market as a private player. But if all Nigeria does is it writes an agreement to Zhang Shan that says, I will treat you fairly. There hasn't been an engagement. I won't discriminate. I won't expropriate. All the rest of it. Yes. And in exchange for these agreements, I'm getting $50 million worth of investment from you. And I have obtained that $50 million worth of investment from you. And now I'm breaching it. Uh, when we say Nigeria has obtained... Yeah, it's just like happened here. Well, I want... I want to be careful because... It doesn't matter if you're asking about enforcement up front or after the fact, nothing's changed other than you've actually gotten all the benefits of this agreement without any obligations. Again, when we talk about the benefits, there is in so much of US law, there is a difference between the government as a regular and a participant. Nigeria did not receive... Nigeria, the people, right? Like the economy of Nigeria, somebody was, you know, contract with, um, with Zhang Shan, whereby Zhang Shan put in however much money. It wasn't actually $50 million, but Nigeria is not a contracting party that received any money. No, under my hypothetical, it would be. Investment would result. Right. If so, right. If I, so that, that sounds actually very much like something like the, um, some aspects of the Belize case in which Belize said, I'm going to sell you these assets for which you're going to pay me $50 million, whatever the number is. Right. That is Belize has entered into the market as a private actor. It doesn't sound something like Belize under your view, because I've told you what the conduct is that it's breached. Right. Well, yeah. And I, and I go back to it. Well, you, you know, I go back to it. How do you reconcile your invocation of weltover with a pretty clear statement in our Belize decision that just don't apply that standard in figuring out whether the New York convention covers, um, sovereign slash investor disputes. Um, respectfully, I, I think that's not quite what the Belize decision says. The Belize decision says we are not going to apply the weltover line or interpreting the word commercial in that section 202 reservation. Um, there is nothing in the Belize decision that talks in, you know, in this Belize decision, there's a lot of these decisions. The one we're talking about now that talks about, um, the, the basic line that person, the New York convention in the first place doesn't encompass states. You can use that line on your first point, but not your second. That's right. Although exactly. And the second thing I would say about the person, but not on, yes, although the second thing that they just didn't make this person argument, but if they had, it would have come out exactly the opposite. Um, they did engage in very private law activity as well, but your honor, they sold assets, um, and they received payments directly to the government for those assets. It was very much engaging the private market and the breach that alleged. Um, I think it was, um, uh, if I remember correctly, state, uh, telecommunications property, like there was a private, there's a governmental nationalized state telecommunications selling state property. That's not a sovereign thing to do. Um, no, I would think of that as being, uh, it's just selling assets. Like they sold assets. They had a, um, they had, you know, telecommunications equipment and an entity that does telecommunications. They sold that to a and I gave land to John saying to develop Nigeria did not, if again, sorry for now, I'm going to drop the Nigeria organ distinction. All right. Okay. Nigeria back into my hypothetical contract gave John Chen land to develop as to that. They can arbitrate and that can be enforced here. That way they can arbitrate. They can be enforced. Um, that sounds more, that does get, get more private. You're more private or not. You just said selling stuff. Well, I, I, the reason you, the reason I keep resisting is because what is private, what is sovereign depends on what's going on in each case. Right. If they sell land, that sounds doesn't belong to John Chang. It must be under the control of Nigerian government. They're selling it. We're right. Nigeria, Nigeria's got some land. They sell it. Um, sure. Sale of land. That's private. They own some land. They sell it. And then they boot John Chang off. So if they sell it and they don't give it to them, they can enforce it. Well, they sell it and then boot them off. They can't enforce it. That's what, is that the difference? Cause you know, it would require police forces. Um, uh, the, yeah, and there's, there's this court, this court has cases on this line. I think wrong versus loudening, for example, is, uh, um, that involves commercial activity, but then the expropriation is sovereign. The, um, so, but if I could go back to the, the, to Belize, there's a second thing about way in which Belize doesn't control this case, which is that in the Belize case, again, the one we're talking about, there's unquestionably a legal relationship. Um, there's this sale of property with the, under which the, the buyer is going to be paying the, paying Belize various amounts in exchange for the sale of property. Like that is whether, you know, and again, it doesn't have to be a contract because contract is the technical word in some, in like under some legal regimes in some countries, but it's an agreement, there's a transaction. Um, so Belize doesn't even have to, the court didn't have to ask the question whether it was a transaction in that case, nobody brought it up because of course there was. Whether that transaction and all Belize says is that that transaction, we don't get out of that by saying there was some sovereign conduct in that transaction. You don't get out of that in terms of the U.S. reservation, but we still have to ask what does real legal relationship, which is considered as commercial, what does legal relationship mean? You have to still have to look at those words in section 202 and in the commercial reservation and in the, you know, in the, in the convention. I thought your argument wasn't about legal relationship, it was about the word person. That's about both. Um, one of them is section one in the briefcase section two. Any other questions? All right, thank you.
judges: Millett, Katsas, Childs